# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TOLLIE CARTER, | |
|       Plaintiff, | Case No. 16-cv-06786 |
|   v. | Honorable John Z. Lee |
| MARIA A. PALLANTE, REGISTER OF COPYRIGHTS, ARC/CONRAD MUSIC, LLC, FUJI MUSIC GROUP, INC. and BMG RIGHTS MANAGEMENT (US) LLC, d/b/a/ BMG CHRYSALIS US | Honorable Mary M. Rowland |
|       Defendants. | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' ARC/CONRAD MUSIC, LLC, FUJI MUSIC GROUP, INC., AND BMG RIGHTS MANAGEMENT (US), LLC, D/B/A BMG CHRYSALIS US MOTION TO DISMISS VERIFIED FIRST AMENDED COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby submits this Response to Defendants' Arc/Conrad Music, LLC, Fuji Music Group, Inc., and BMG Rights Management (US), LLC, d/b/a BMG Chrysalis US Motion To Dismiss Verified First Amended Complaint ("Motion to Dismiss"). In support thereof, Plaintiff states as follows:

## INTRODUCTION

Plaintiff is the rightful heir to a number of musical compositions written in whole or in part by his father, Calvin Carter, and his uncle, James Bracken ("the Songs"). After Plaintiff reclaimed rights to the Songs by filing various notices of termination and renewal registrations, Defendants Arc/Conrad Music, LLC, Fuji Music Group, Inc., and BMG Rights Management (for the purpose of this Response, "Defendants") nevertheless willfully continued to represent to third parties that they had full rights to the Songs, actively licensed such music to third parties in

exchange for a percentage of royalties without Plaintiff's knowledge or permission, reproduced and distributed those songs without Plaintiff's knowledge or permission, and enjoyed several other monetary benefits from the commercial exploitation of the Songs and the commercial magnetism of the authors and their stories.

Since the filing of this lawsuit, Defendants have directly or indirectly admitted that they (1) misrepresented to third parties that they owned the rights to a number of the Songs *after* Plaintiff reclaimed the rights to those songs, (2) entered into *new* licensing agreements with third parties for a number of the Songs *after* Plaintiff reclaimed the rights to those songs, and (3) received royalty payments from those post-termination licensing agreements. Defendants' attempt to draw out the time and expense of this case by proffering a number of questionable arguments is unfortunate.

## ARGUMENT

Plaintiff's Verified First Amended Complaint ("Amended Complaint") contains a clear case and controversy, well-pled allegations of personal jurisdiction, plausible causes of action, and non-preempted state law claims. Defendants' arguments to the contrary are either frivolous or erroneous—or both.

## I. PLAINTIFF'S AMENDED COMPLAINT SHOULD NOT BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1).

To constitutionally exercise jurisdiction over parties in a lawsuit, federal courts—among other things—must have proper subject matter jurisdiction over the claims at issue. *See generally Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 254 (2010); Fed. R. Civ. P. 12(b)(1).

In his Amended Complaint, Plaintiff specifically pleads that the Court has subject matter jurisdiction over Defendants "pursuant to 28 U.S.C. §§1331 and 1338(a) because [Defendants]

violated federal copyright law, 17 U.S.C. §§ 101, *et seq*" and that the Court "has supplemental jurisdiction over Plaintiff's related state law claims under 18 U.S.C. § 1367." (Am. Compl. ¶7).

Therefore, subject matter jurisdiction in this case is "evident on the face of the complaint." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (overruled on other grounds); *accord Maximum Indep. Brokerage, LLC v. Smith*, No. 16 C 5548, 2016 WL 6395577, at \*2 (N.D. Ill. Oct. 28, 2016).

Additionally, Article III of the Constitution requires that federal courts adjudicate only cases in which there is a case or controversy. *Associated Indus. Ins. Co., Inc. v. Stahl Cowen Crowley Addis LLC*, No. 15 C 4296, 2016 WL 3088142, at \*1 (N.D. Ill. June 2, 2016). There is no case or controversy, and a case is deemed "moot," when "intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). A defendant who believes the case is moot may file a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Associated Indus. Ins. Co., Inc. v. Stahl Cowen Crowley Addis LLC*, No. 15 C 4296, 2016 WL 3088142, at \*1 (N.D. Ill. June 2, 2016).

Here, Defendants do not argue that any intervening circumstances have deprived plaintiff of a personal stake in the outcome of the lawsuit. Nor do they generally argue that Plaintiff failed to demonstrate that he possesses a legally cognizable interest or personal stake in the outcome of the action. Nor could Defendants argue such things. Instead, Defendants erroneously conflate the case or controversy requirements under Fed. R. Civ. P. 12(b)(1) with the pleading requirements under Fed. R. Civ. P. 12(b)(6).

Essentially, Defendants argue that there is no case and controversy because the Amended Complaint fails to sufficiently allege copyright infringement causes of action. Specifically,

Defendants argue that the case is "mooted" because Plaintiff's allegation that Defendants "published, distributed, publicly performed, displayed, or created derivative works of the [Songs]" is not sufficient to "support claims of copyright infringement," and because Plaintiff's vicarious and contributory copyright infringement claims lack a necessary pleading element: direct copyright infringement by third parties. Defs.' Mot. to Dismiss, Dkt. No. 43, Pages 4-5. Such arguments (which are themselves erroneous) are properly brought under Fed. R. Civ. P. 12(b)(6), *not* Fed. R. Civ. P. 12(b)(1). *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."); *accord Shapiro v. McManus*, 136 S. Ct. 450, 452 (2015).

However, giving Defendants the benefit of the doubt, it appears that they are not actually arguing that the case is moot; rather, they seem to be arguing that Plaintiff's assertion of federal question subject matter jurisdiction under the Copyright Act is "wholly insubstantial and frivolous." *See Bell*, 327 U.S. at 682. This argument, however, is also without merit.

The "general rule is that if the complaint states a case arising under the Constitution or federal law, proper federal subject matter jurisdiction exists even though on the merits the plaintiff may have no cognizable federal claim." *Sutton v. Napolitano*, 986 F. Supp. 2d 948, 957 (W.D. Wis. 2013) (internal citations omitted); *see also Miller v. Herman,* 600 F.3d 726, 731–32 (7th Cir.2010) (noting that, when a plaintiff had to show that windows were a "consumer product" within the meaning of a statute to prevail, and not just to get into federal court, "defendants' Rule 12(b)(1) motion was in fact an indirect attack on the merits" and should have been treated as a Rule 12(b)(6) motion). The "narrow exception" to this general rule is that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the

Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.[1] *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *Sutton v. Napolitano*, 986 F. Supp. 2d 948, 957 (W.D. Wis. 2013).

Here, there is no serious question that Plaintiff's copyright infringement claims are *not* "immaterially or solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." Quite the contrary, Plaintiff's copyright infringement claims are the heart of his Amended Complaint and are not only non-frivolous, they are facially plausible and, in many cases, highly probable if not conclusively proven.

First, Plaintiff explicitly alleges that "BMG, ARC, and Fuji reproduced, published, distributed, displayed, broadcasted, and/or publicly performed Plaintiff's copyright songs." Pl. V. First Am. Compl., Dkt. No. 35, ¶108 ("Am. Compl. ¶108"). There is no question that this claim is not "wholly insubstantial or frivolous." The Amended Complaint's factual allegations and attached exhibits demonstrate that Defendants (1) are in the business of commercially exploiting music, (2) originally owned rights to and regularly commercialized the Songs, (3) have represented to Plaintiff and to third parties that they possess rights to the Songs even after Plaintiff reclaimed those rights, (4) have actively commercialized several of the Songs even after Plaintiff reclaimed all rights to the Songs, and (5) likely still possess many of the Master Tapes and physical copyright registrations to the Songs. Am. Compl. Am. ¶¶64-69; Compl. Exhs. 21-24, 27; Defs.' Mot. To Dismiss, Dkt. No. 20, Pages 4-5. It is highly probable that Defendants (who carried on as though they still had full rights to the Songs and who actively licensed and

---

[1] Defendants' citation to *Hall v Inner City Records* is a good example of the exception because the plaintiff in that case suffered a breach of contract, not copyright infringement, and so the plaintiff's copyright infringement claim was wholly insubstantial. 212 U.S.P.Q. 272 (S.D.N.Y. 1980). *Hall* is not analogous to the case at issue because Plaintiff has suffered injuries resulting from Defendants' direct and secondary copyright infringement—not a breach of contract.

commercialized the Songs) at the very least reproduced and distributed the Songs as part of their licensing business.

Second, in regard to Plaintiff's vicarious and contributory copyright infringement claims, the Amended Complaint in numerous instances includes explicit allegations of direct infringement by third parties. In Count III, Plaintiff alleges that "BMG (as administrator of and on behalf of ARC and Fuji) materially induced and caused third parties to, among other things, publicly perform Plaintiff's Copyrighted Songs by virtue of a licensing agreement." Am. Compl. ¶113. In Count IV, Plaintiff specifically alleges that "third parties infringed on Plaintiff's Copyrighted Songs by, among other things, publicly performing those songs without Plaintiff's authorization or consent." Am. Compl. ¶118. Furthermore, Plaintiff specifically alleges that "[n]umerous third parties—relying on BMG's representations and without Plaintiff's authorization—publicly performed, reproduced, and distributed Plaintiff's copyrighted songs," and that "BMG, ARC, and Fuji directly benefited from this third-party infringement by collecting and retaining royalties flowing from the infringing conduct." Am. Compl. ¶¶94-97 (emphasis added). Lastly, Plaintiff specifically alleges that "[n]umerous third parties—relying on BMG's representations and without Plaintiff's authorization—publicly performed, reproduced, and distributed Plaintiff's copyrighted songs," Am. Compl. ¶70, and even includes a collection of royalty statements with the specific names of numerous infringing third-party licensees. Am. Compl., Exh. 27. In short, Defendants' claim that Plaintiff's Amended Complaint does not contain any allegation of "direct infringement by a third party" is baffling.

Simply put, Plaintiff's Amended Complaint explicitly pleads federal question jurisdiction. There is an ongoing case and controversy between Plaintiff and Defendants. Plaintiff's copyright infringement claims are emphatically not "immaterially or solely for the

purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83. Accordingly, because Plaintiff has properly pled subject matter jurisdiction, the Court should wholly deny Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1).

## II.   PLAINTIFF ADEQUATELY PLEADS PERSONAL JURISDICTION OVER DEFENDANTS.

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the court first must decide whether any material facts are in dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). If such a dispute exists, the court must hold a hearing at which the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Where there are no disputes of material facts, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt*, 302 F.3d at 713; *Basile v. Prometheus Glob. Media, LLC*, No. 15-CV-10138, 2016 WL 2987004, at *2 (N.D. Ill. May 24, 2016). To assert a *prima facie* case of personal jurisdiction consistent with Illinois law and the federal constitution, the plaintiff need only to establish minimum contacts of defendants and that a cause of action, such as defendants' commission of a tort in Illinois, arose out of such contacts. *See Euromarket Designs, Inc. v. Crate & Barrel Limited*, 96 F.Supp. 2d 824, 833-34 (N.D. Ill. 2000); 735 ILCS § 5/2–209(a-c).

"Plaintiff's allegations are taken to be true unless controverted by defendant's affidavits, and conflicts must be resolved in plaintiff's favor." Defs.' Mot. to Dismiss, Dkt. No. 43, Page 6 (citing *Basile*, 2016 WL at 2; *Lifeway Foods*, 940 F.Supp. at 1318; *John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.,* 821 F.2d 399, 402 (7th Cir. 1987)). The court reads the complaint liberally, in its entirety, and with every inference drawn in favor of the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co*., 440 F.3d 870, 878 (7th Cir. 2006).

Here, no material facts are in dispute and Plaintiff has clearly established a *prima facie* case of personal jurisdiction. Plaintiff has alleged that the relevant Defendants "engaged in . . . tortious acts within Illinois and the commission of tortious acts outside of Illinois knowing and intending that such act would interfere with Illinois interests and cause injury within Illinois . . . . Arc, Fuji, and BMG have licensed for profit the copyrighted music at issue to Illinois-based entities and individuals." Am. Compl. ¶8. Therefore, the Court must take these allegations as true, as they have not been controverted by any affidavits from the Defendants. *Lifeway Foods*, 940 F.Supp. at 1318*; John Walker,* 821 F.2d at 402. Such allegations are more than sufficient to establish a *prima facie* case of personal jurisdiction over Defendants.

Defendants' characterization of Plaintiff's factual allegations as "legal conclusions" is incorrect and appears like a back-door attempt to impose a heightened pleading standard on personal jurisdiction pleading. *Cf. Wojcik v. Interarch, Inc.,* 2013 WL 5904996 (N.D. Ill. 2013) ("FRCP 9(b) requires heightened pleading specificity for fraud and civil conspiracy claims including the 'who, what, where, when and how' of the fraud and the conspiracy."). Plaintiff pleads that specific actors (Defendants) engaged in specific activity (licensing for profit Plaintiff's copyright music to businesses and individuals within the State of Illinois), giving rise to specific claims in Plaintiff's Complaint (vicarious and contributory copyright infringement), must be taken as true. If Defendants wish to argue that they have never licensed any of the Songs to Illinois-based parties, or if they wish to contend that they did not reasonably expect that their licensing agreements with third parties (such as Broadcast Music, Inc. a/k/a "BMI," a national performance rights organization) would result in the Songs being publicly performed in Illinois, Defendants can do so through affidavits. Otherwise, the Court must accept Plaintiff's

allegations as true and Defendants must accept that personal jurisdiction in the case is well-pled and proper.

Plaintiff's Amended Complaint properly pleads personal jurisdiction. Accordingly, this Court should reject Defendant's argument to dismiss Plaintiff's Amended Complaint under 12(b)(2).

## III. PLAINTIFF ADEQUATELY PLEADS COPYRIGHT INFRINGEMENT CLAIMS AGAINST DEFENDANTS.

A complaint need only contain a "'short and plain statement of the claim showing that the pleader is entitled to relief,'" *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citing Fed. R. Civ. P. (8)(a)(2)), that is "plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (citations omitted). When reviewing a Rule 12(b)(6) motion to dismiss, the court must "construe all allegations and any reasonable inferences in the light most favorable to the plaintiff," and all factual allegations should be accepted as true. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014). Dismissal is proper only if the plaintiff can prove no set of facts to support its claim. *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011); *Spiegel v. Carlson*, No. 1:15-CV-01809, 2016 WL 5477529, at *3 (N.D. Ill. Sept. 29, 2016).

In its pleadings, Plaintiff is not required to prove its case (although Plaintiff's pleadings provide enough evidence to conclusively prove some claims), nor is Plaintiff required to plead the level of specificity involved in fraud and civil conspiracy claims (though Plaintiff includes enough facts to meet this heightened level of pleading). *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 678 868 (2009) (stating that "the pleading standard Rule 8 announces does not require 'detailed factual allegations' . . . .") *with Wojcik v. Interarch, Inc.*, 2013 WL 5904996 (N.D. Ill.

2013) ("FRCP 9(b) requires heightened pleading specificity for fraud and civil conspiracy claims including the 'who, what, where, when and how' of the fraud and the conspiracy.").

Instead, the plaintiff must only give the defendant fair notice of its claims (and proposed relief) by pleading factual allegations to make a claim plausible on its face. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (noting that under Fed. R. Civ. P. 8, plaintiff need not plead specific facts, but only give defendant "fair notice" of what plaintiff's claim is and basis for that claim). A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). That being said, "in examining the facts and matching them up with the stated legal claims" courts "give 'the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Smith v. Phoenix Seating Sys., LLC*, No. CIV. 09-568-GPM, 2010 WL 455508, at *2 (S.D. Ill. Feb. 3, 2010) (citing *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602-03 (7th Cir. 2009)).

Here, Plaintiff's Amended Complaint alleges several claims (seven of which are subject to Defendants' Motion to Dismiss) with sufficient detail and evidentiary support to conclusively prove those claims, let alone survive a 12(b)(6) standard. Defendants' 12(b)(6) arguments, accordingly, are wholly without merit.

### A. Plaintiff Adequately Pleads a Copyright Infringement Claim (Count II).

As explained above, Plaintiff's copyright infringement allegation is fairly straightforward. Plaintiff alleges that "BMG, ARC, and Fuji reproduced, published, distributed, displayed, broadcasted, and/or publicly performed Plaintiff's copyright songs." Am. Compl. ¶108. Furthermore, the Amended Complaint's factual allegations and attached exhibits, *see* Fed.

R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *accord Moranski v. Gen. Motors Corp.,* 433 F.3d 537, 539 (7th Cir.2005), demonstrate that Defendants (1) operate a business that licenses and otherwise commercially exploits music, (2) at one time owned rights to the Songs, (3) routinely commercially exploited the Songs when they owned the rights, (4) have represented to third parties and to Plaintiff that they own the rights to the Songs even after Plaintiff had reclaimed those rights, (5) have actively commercialized the Songs after Plaintiff reclaimed all rights to the Songs, and (6) likely retain the Master Tapes and physical copyright registration certificates to the Songs. *See* Am. Compl. ¶¶ 8, 67-80, 85-88, 93-99; Am. Compl., Exhs. 21-24, 27.

It is more than plausible—indeed probable—that Defendants (who carried on its business as though they still had full rights to the Songs and who actively licensed and commercialized the Songs) at the very least reproduced and distributed the Songs as part of their licensing business. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010) (affirming district court's denial of a motion to dismiss based on plausibility of claim established by circumstantial factual allegations); *see also Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (holding that allegations based on information and belief should be allowed in federal practice, particularly given matters peculiarly within knowledge of defendants); *accord Smith v. Harvey*, No. 08 C 816, 2010 WL 1292473 at *4 (N.D. Ill. Mar. 29, 2010).

Accordingly, Plaintiff's Amended Complaint contains a properly-pled copyright infringement cause of action. All of the necessary copyright infringement elements are present and the surrounding factual allegations within Plaintiff's 35-page Amended Complaint and over 400 pages of exhibits make that claim highly *probable*, not just plausible.

**B.    Plaintiff Adequately Pleads Contributory Infringement and Vicarious Copyright Infringement Causes of Actions (Counts III-IV).**

Defendants also argue that Plaintiff fails to adequately plead vicarious and contributory copyright infringement causes of action because the Amended Complaint does not include allegations of direct copyright infringement by a third party. Defs.' Mot. to Dismiss, Dkt. No. 43, Page 5. As explained above, this is simply not accurate. Plaintiff explicitly alleges direct copyright infringement by third parties several times throughout his pleadings. *See* Am. Compl. ¶113. Am. Compl. ¶¶ 70, 94-97, 113, 118; Am. Compl., Exh. 27.

Furthermore, Defendants' own admissions in their September 21, 2016 Motion to Dismiss (*i.e.*, admitting to waiting until March of 2016 to fully recognize Plaintiff's rights to all of the 2014 Carter Songs and 2014 Bracken Songs) make Plaintiff's allegations that third parties directly infringed on the 2014 Bracken Songs and the 2014 Carter songs highly *probable*, not just "plausible." Defs.' Motion to Dismiss, Dkt. No. 20, Page 4. Lastly, Plaintiff's allegations of direct third-party infringement is directly supported by Defendants' own statements and evidence (attached to the Amended Complaint as Exhibit 27), which includes royalty statements involving specific third-party infringers that *first* entered into licenses for several of the Songs *after* Plaintiff reclaimed the rights to those songs (from Defendants in 2015 and the first half of 2016). Am. Compl. Exh 27. Defendants' argument that Plaintiff failed to plead third-party infringement, therefore, is wholly without merit.

**C.    Plaintiff Adequately Pleads Copyright Infringement as to the Songs Plaintiff Reclaimed by Filing Renewal Registrations.**

A statute of limitations defense is an affirmative defense and the Seventh Circuit has clearly stated that "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935

(7th Cir. 2012). Therefore, a statute of limitation defense may only be raised in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir.2005) (internal quotations omitted)).

Here, Plaintiff alleges that he reclaimed rights to a number of songs by filing renewal registrations in the late 1980's and early 1990's (the "Renewal Songs"), and that Defendants unlawfully infringed on his rights in the Renewal Songs after he reclaimed those rights. Am. Compl. ¶¶83, 91. To be clear, nowhere in his pleadings does Plaintiff allege that Defendants' last instance of copyright infringement occurred more than three years before Plaintiff filed his original Complaint. Therefore, the requirement that "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense'" is not met. *Brooks*, 578 F.3d at 579.

More importantly, even if the first instance of infringement occurred decades ago, Plaintiff does not allege the absence of successive infringement. In fact, Plaintiff specifically alleges that Defendants have successively misrepresented to third parties that they owned rights to the Renewal Songs from the first date the songs were reclaimed to the present. *See* Am. Compl. ¶85, 93. The fact that Defendants continue to explicitly assert rights to the Renewal Songs, combined with the facts that Exhibit 27 demonstrates Defendants' proclivity to continue to commercially exploit and successively infringe on songs over which they unlawfully assert rights (after Plaintiff informed Defendants that he has reclaimed the rights to several of the Songs and Defendants knew or should have known they did not have rights), demonstrate Defendants' successive infringement of the Renewal Songs is not only plausible but highly probable.

13

Defendants, needless to say, presently control the information and evidence pertaining to the specific facts of infringement regarding the Renewal Songs. However, viewing the factual allegations and circumstantial evidence in the Amended Complaint and attached exhibits in the light most favorably to Plaintiff, it is highly probable that Defendants successively committed copyright infringement (as well as vicarious and contributory copyright infringement) against the Renewal Songs in one continuous act of infringement starting from the dates of renewals to at least three years ago. Indeed, it is highly probable that Defendants continue to this day to unlawfully reproduce, distribute, and license the Renewals Songs to third parties, the evidence of which will certainly come to light during discovery.

It is well-established law that "a plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (internal quotation omitted)). To meet this plausibility standard, the complaint must supply "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Id.*; *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009). Plaintiff's pleadings supply "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegation of Defendants' copyright infringement of the Renewal Songs. *Id.*

D.      **Plaintiff Adequately Pleads Copyright Infringement as to the 2012 Songs.**

Plaintiff's vicarious and contributory copyright infringement causes of action are based on, among other things, Defendants' licensing of the Songs to third parties, as well as the

monetary benefits and third-party infringement that resulted from those licenses. Am. Compl. ¶¶108-110, 113-115, 117-119.

In a rather disjointed argument, Defendants contend that the Supreme Court's decision in *Mills Music* permits Defendants to continue to receive royalties for songs licensed to third parties before the effective date of termination, and that Plaintiff does not explicitly allege that there are any licenses that were issued after the effective date of termination. Defs.' Mot. to Dismiss, Dkt. No. 43, Page 11. Defendants are mistaken.

Certainly, Defendants are correct in asserting that under the Supreme Court's much-maligned *Mills Music* decision, any licenses Defendants issued for derivative works of the 2012 Songs *before* the effective date of termination are not affected by Plaintiff's termination (and so Defendants by right may continue to exploit those licenses). However, Defendants are incorrect in asserting that omitting the exact dates of those licenses in the pleadings renders Plaintiff's copyright infringement claims implausible. Defendants are also mistaken that Plaintiff's pleadings do not include specific dates or licensees.

First, the fact that Defendants are in the business of commercializing music, the fact that Defendants previously owned rights to the 2012 Songs, the fact that Defendants have regularly entered into licensing agreements for the 2012 Songs, along with the fact that Defendants refused to acknowledge Plaintiff's rights to the complete set of 2012 Songs until March of 2016, makes it at least plausible—and Plaintiff would argue highly probable—that Defendants entered into licensing agreements with third parties between January 1, 2015 and March of 2016. Am. Compl. ¶¶ 8, 67-70; Defs.' Mot. To Dismiss, Dkt. No. 20, Pages 4-5. But such probabilities need not be considered in this case. Exhibit 27 of Plaintiff's Amended Complaint contains a letter from the Senior Director of Royalty Services for Defendant BMG (Mr. David Schneider)

stating that Defendant BMG was finally agreeing to pay Plaintiff the royalties rightfully due to him as result of the 2012 Notices of Terminations. Am. Compl. Ex. 27. Most importantly, this letter explains that licensing royalties "earned through licenses issued before the effective termination date of 1/1/15" were removed from the total royalty amount. Am. Compl. Ex. 27. All of the songs not removed, which make up an overwhelming majority of the songs listed in the royalty statements, are all based on unlawful licenses entered into *after* the effective termination date of 1/1/15. Am. Compl. Ex. 27.

Defendants know very well that they unlawfully entered into licensing agreements with third parties after January 1, 2015 (the effective date of termination of the 2012 Songs). Exhibit 27 makes this an indisputable fact. Defendants' attempt to argue otherwise is lamentable.

Because Plaintiff adequately pleads all of the essential elements of his copyright infringement claims, and because the pleadings conclusively prove that Defendants entered into licensing agreements with specific third parties for the 2012 Songs after January 1, 2015, Plaintiff's copyright infringement claims are essentially proven, not just "plausible." Accordingly, the Amended Complaint contains adequately pled copyright infringement allegations as to the 2012 Songs.

## E.    Plaintiff Adequately Pleads a Falsification of Copyright Management Information Claim

In his Amended Complaint, Plaintiff alleges that "Defendants provided false copyright management information to third parties, including false information about the name of, and other identifying information about, the copyright owner of the work, as well as about terms and conditions for use of the work" in violation of 17 U.S.C. § 1202(a)(1); 17 U.S.C. § 1202(c)(3),(6). Am. Compl. ¶121. In their Motion to Dismiss, Defendants contend that the copyright management information must have some relation to the Internet, electronic

commerce, automated copyright protections or management systems, public registers, or other technological measures or processes." Defs.' Mot. To Dismiss, Dkt. No. 43, Page 12. Defendants are mistaken.

The plain language of 17 U.S.C. § 1202 "simply establishes a cause of action for the removal of (among other things) the name of the author of a work when it has been 'conveyed in connection with copies of' the work." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 (3d Cir. 2011). The statute imposes no explicit requirement that such information be part of an 'automated copyright protection or management system . . . [i]n fact, it appears to be extremely broad, with no restrictions on the context in which such information must be used in order to qualify as [copyright management information]." *Id.*

In arguing for a more restrictive interpretation of the statute, Defendants improperly cherry-pick cases from other Circuits without bringing to the Court's attention contrary case law (including unfavorable case law from within the 7th Circuit). Defendants' cited cases, furthermore, "disregard the plain language of the statute," *Id.*, and impose an interpretative gloss on § 1202 that directly violates well-established rules of statutory interpretations. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 296 (2006) (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–254 (1992) ("When the statutory 'language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'")); *see also U.S. v. Ye,* 588 F.3d 411, 414–15 (7th Cir.2009) (recognizing that courts must "assume[] that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive.").

17

Although "some courts have wrestled with indications in the statute's legislative history that Congress intended CMI to be in digital form . . . most courts in recent years have recognized that the plain language of the statute includes no such requirement and have not reached an analysis of the legislative history." *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1101 (N.D. Ill. 2014). Indeed, the statute at issue provides a cause of action "whenever the types of information listed in § 1202(c)(1)–(8) and 'conveyed in connection with copies ... of a work ... including [but not requiring] in digital form' is falsified or removed, regardless of the form in which that information is conveyed." *Murphy*, 650 F.3d at 305; *see also Agence France Press v. Morel*, 769 F.Supp.2d 295, 2011 WL 147718, at *9–10 (S.D.N.Y. Jan.14, 2011); *Interplan Architect, Inc. v. C.L. Thomas, Inc.*, No. CIV.A.408CV03181, 2009 WL 6443117, at *1-2 (S.D. Tex. Nov. 13, 2009) (denying defendants' motion to dismiss plaintiff's copyright management information claim because plaintiff pled that defendants intentionally removed or altered "the copyright management information provided in physical and/or electronic copies of [p]laintiff's [a]rchitectural [d]ocuments."); *Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 981 (N.D. Ill. 2010) (denying defendant's motion to dismiss § 1202 claim); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1101 (N.D. Ill. 2014) (rejecting defendant's argument that "notations on the back of the album jacket could not possibly constitute [copyright management information, or 'CMI,'] under any circumstances," because the notations are not '"part of an automated copyright protection system . . . digital, or connected to the internet or electronic commerce" because "the plain language of the statute . . . does not require any such connection."). Accordingly, despite Defendants representations to the contrary, the copyright management information at issue does not need to have a digital or technological relation.

18

Defendants also argue that the Amended Complaint does not provide sufficient factual allegations to plead a facially plausible § 1202 claim. Defs.' Mot. to Dismiss, Dkt. No. 43, Page 12. Defendants are incorrect. The factual allegations in the Complaint as a whole establish that Defendants entered into numerous licensing agreements for the Songs with third parties (some of the dates and specific names of those third parties are attached in Exhibit 27 of the Amended Complaint), that Defendants reproduced and distributed copies of the Songs, and that Defendants misrepresented to Plaintiff and to third parties that they were the copyright owners of the Songs, when Plaintiff was in fact the copyright owner. Am. Compl. ¶108. These allegations create a reasonable inference that Defendants included false copyright ownership and false terms and conditions information in connection with physical copies of the Songs when they licensed that music to third parties.

Therefore, Plaintiff's pleadings create a plausible possibility that Defendants conveyed false copyright management information to third parties, including the name of, and other identifying information about, the copyright owner of the work, as well as about terms and conditions for use of the work, with copies of the work in violation of 17 U.S.C. § 1202(a)(1) and 17 U.S.C. § 1202(c)(3),(6). Furthermore, because Defendants continue to represent to Plaintiff and to others that they and not Plaintiff own the copyright rights to Renewal Songs, and that they (not Plaintiff) set the terms and conditions for the use of those songs, it is plausible—indeed probable—that Plaintiff conveyed false copyright management information with copies of the Songs (undoubtedly the songs contained in Exhibit 27) to third parties. Plaintiff's Amended Complaint, therefore, contains more than adequate allegations for a Falsification of Copyright Management Information claim.

After "examining the facts and matching them up with the stated legal claims," and "giv[ing] the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint," *Smith v. Phoenix Seating Sys., LLC*, No. CIV. 09-568-GPM, 2010 WL 455508, at *2 (S.D. Ill. Feb. 3, 2010) (citing *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602-03 (7th Cir. 2009)), the Court should have no trouble finding that Plaintiff's pleadings "supply enough fact to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009). Therefore, because all of Defendants' 12(b)(6) arguments are wholly without merit, this Court should deny Defendants' Motion to Dismiss any Counts in Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6).

## IV.  PLAINTIFF'S STATE LAW CLAIMS ARE NOT PRE-EMPTED BY THE COPYRIGHT ACT

17 U.S.C. § 301(a) preempts any "legal or equitable rights [under state law] that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103. . . ." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (citing 17 U.S.C. § 301(a)). The Seventh Circuit uses a two-prong test to determine whether a cause of action is preempted by the Copyright Act: (1) the work must be "fixed in tangible form and comes within the subject matter of copyright"; and, (2) "the rights granted under state law *must be equivalent* to the exclusive rights established by federal copyright law in § 106." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005). A state right is "equivalent" to copyright law if it is violated by reproducing (whether in original or derivative form), distributing, performing or displaying the copyrighted material. *Id.* at 676-77. However, state-law causes of action are not preempted if they have additional

elements that change the nature of the copyright infringement claim. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005).

Here, each of Plaintiff's state law claims mandate and include additional elements that are qualitatively different than federal copyright rights. Plaintiff's state law claims are accordingly not preempted by the Copyright Act.

### A. Plaintiff's Unjust Enrichment Claim is not Preempted by the Copyright Act

First, Defendants' unjust enrichment preemption argument directly contradicts its previous argument that Defendants' purported actions do not amount to a copyright infringement claim. Indeed, Defendants spent the entirety of page 4 of its Motion to Dismiss arguing that Plaintiff's allegations centered on how Defendants' issuance of unauthorized licenses and related receipt of royalties do not constitute a copyright claim. Defs.' Mot. to Dismiss, Dkt. No. 43, Page 4. Yet, for their preemption argument, Defendants state that "[d]eriving a benefit from the unauthorized use of another's copyright to the detriment of the copyright owner is . . . equivalent of violating Copyright Act and therefore preempted by the Copyright Act." Defs.' Mot. to Dismiss, Dkt. No. 43, Page 13. Defendants cannot take both sides of the same argument.

More importantly, Plaintiff's unjust enrichment claim does not just allege unjust enrichment based on rights protected by copyright law (which would be preempted by the Copyright Act *if* Plaintiff's unjust enrichment claim were not pled in the alternative—which it is), Plaintiff's claim also addresses Defendants' unjust enrichment pertaining to their "failure to pay royalties and licensing revenues," *AVKO Educ. Research Found. Inc. v. Wave 3 Learning Inc.*, No. 15-CV-3393, 2015 WL 6123547, at *5 (N.D. Ill. Oct. 15, 2015) (holding similar unjust enrichment claim not preempted), as well as Defendants' unjustly retained benefits related to the commercial value and goodwill of the song stemming from exercising strategic decisions over

21

what kind of products and services for which it should or should not be licensed.  Am. Comp. ¶128.

Therefore, because Plaintiff's unjust enrichment claim qualitatively differs from its copyright claims, because more benefits unjustly retained by Defendants are likely to come to light during discovery, and because Plaintiff pleads its unjust enrichment claim in the alternative, Plaintiff's unjust enrichment claim is not preempted by the Copyright Act. *See Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409, 419 (S.D.N.Y. 2004) (denying the defendants' motion to dismiss claim after construing the plaintiff's claim for unjust enrichment "as a claim that is made in the alternative to [p]laintiff's copyright infringement claim").

**B.      Plaintiff's Deceptive Trade Practices Claim is Not Preempted by the Copyright Act**

Defendants also argue that Plaintiff's claim for deceptive trade practices is preempted by copyright law.  Plaintiff presents a stronger argument against preemption.

While it is true that some UDTPA claims have been preempted by copyright law, *see Defined Space, Inc. v. Lakeshore E., LLC*, 797 F. Supp. 2d 896, 903 (N.D. Ill. 2011), it is also true that the court must examine not just the cause of action but also "the allegations underlying the cause of action" to "determine the nature of the action" and whether or not it is preempted by copyright law.  *Stephen & Hayes Const., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1198 (N.D. Ill. 1998).

Here, Plaintiff's injuries, as well as the injuries to Illinois residents, stem not from Defendants' "mere act of reproduction, performance, distribution or display," *Kluber Skahan & Associates, Inc. v. Cordogen, Clark & Assoc., Inc.*, No. 08-CV-1529, 2009 WL 466812, at *10 (N.D. Ill. Feb. 25, 2009), but rather from Defendants' false representations to third parties

(including Illinois consumers) in *advertising material* that they are rightful owners and commercial source of certain songs and catalogues of music when they knew or should have known that Plaintiff was the source and owner of those songs and catalogues. Am. Compl. ¶132. Such deceptive commercial representations are more akin to trademark causes of action because they are based on Defendants holding themselves out as "a" or "the" lawful source of certain copyright songs and artist catalogues. Indeed, because it is a matter of public record (via the Copyright Office Database), third-party consumers who seek to license the songs are unquestionably misled by Defendants' false representations that they own rights to the music. Such false representations lead consumers to go to Defendants for the songs rather than to Plaintiff. These false representations may also lead third-party consumers to believe that Defendants were abiding by the quality control standards set by Plaintiff when in fact they were following their own quality control standards via licensing restrictions.

Most tellingly, there is no question that Defendants could have made such false and misleading representations as to source and ownership of songs and artist catalogues of songs *in advertising material* without ever committing an "act of reproduction, performance, distribution or display." *Id.*; *Rubin v. Brooks/Cole Pub. Co.*, 836 F. Supp. 909, 924–25 (D. Mass. 1993) (collecting cases). That is because the nature of this claim is entirely different than a copyright claim.

Accordingly, Plaintiff's alleged additional injury and elements, which are beyond and qualitatively differ from any "mere act of reproduction, performance, distribution or display" or any equivalent right thereof, preclude Plaintiff's deceptive trade practices claim from copyright preemption. *See Stephen & Hayes Const., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1199 (N.D. Ill. 1998) (holding that plaintiff's UDTPA claim was not preempted by copyright

23

law); *Nash v. CBS, Inc.*, 704 F. Supp. 823, 833 (N.D. Ill. 1989) (holding that plaintiff's UDTPA claim was not preempted by copyright law); *Cf. Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 911 (7th Cir. 2005) (holding that plaintiff's claim under the Illinois right of publicity statute was not preempted by federal copyright law).

As "courts have repeatedly stressed the extraordinary nature of complete preemption and its limited applicability," *Leto v. RCA Corp.*, 355 F. Supp. 2d 921, 923–24 (N.D. Ill. 2004), and as Plaintiff has alleged claims with additional elements qualitatively different from any copyright claim, Plaintiff's deceptive trade practices claim is not preempted.

**C.     Plaintiff's Tortious Interference with Prospective Business Interests Claim is not Preempted by the Copyright Act**

Defendants additionally attempt to argue that Plaintiff's claim for tortious interference with prospective business interests is preempted by copyright law.     Am. Compl. ¶14. Defendants are mistaken.

Under Illinois law, tortious interference claims require: (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009).

Here, the Amended Complaint contains all of the necessary elements and factual allegations to establish a plausible claim of tortious interference with a prospective business interest.     Am. Compl. ¶¶134-140.     More importantly, "Plaintiff's tortious interference with a prospective business interests claim has additional elements not covered by copyright law," such as "false statements and representations" that "convinc[e] licensees to purchase licenses to

24

Plaintiff's Copyrighted songs from [Defendants] instead of Plaintiff" that are "not equivalent to the rights protected by copyright law." *AVKO Educ. Research Found. Inc. v. Wave 3 Learning Inc.*, No. 15-CV-3393, 2015 WL 6123547, at *6 (N.D. Ill. Oct. 15, 2015) (holding similar tortious interference claim not preempted by copyright law). Accordingly, Plaintiff's tortious interference claim is not preempted by the Copyright Act.

Plaintiff's state law claims mandate and include additional elements that are qualitatively different than federal copyright rights. Accordingly, Plaintiff's state law claims are not preempted by the Copyright Act. The Court should therefore deny Defendants' Motion to Dismiss based on federal copyright law preemption.

CONCLUSION

Plaintiff's Amended Complaint contains a clear case and controversy, well-pled allegations of personal jurisdiction, plausible causes of action, and non-preempted state law claims. The arguments set forth in Defendants' Motion to Dismiss are not persuasive. Accordingly, the Court should deny Defendants' Motion to Dismiss entirely.

Dated: December 16, 2016

Respectfully submitted,

/s/ Matthew R. Grothouse
Matthew R. Grothouse
ARDC # 6314834
Saper Law Offices, LLC
505 N LaSalle, Suite 350
Chicago, IL 60654
Telephone: 312-527-4100
matt@saperlaw.com

Attorney for Plaintiff.

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 16, 2016 the foregoing

**PLAINTIFF'S RESPONSE TO DEFENDANTS' ARC/CONRAD MUSIC, LLC, FUJI MUSIC GROUP, INC., AND BMG RIGHTS MANAGEMENT (US), LLC, D/B/A BMG CHRYSALIS US MOTION TO DISMISS VERIFIED FIRST AMENDED COMPLAINT**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to Defendants' counsel of record.

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Matthew R. Grothouse
Matthew R. Grothouse