## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **TOLLIE CARTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **16 C 6786** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **MARIA A. PALLANTE, Register of** | ) | |
| **Copyrights, ARC/CONRAD MUSIC,** | ) | |
| **LLC, FUJI MUSIC GROUP, INC., and** | ) | |
| **BMG RIGHTS MANAGEMENT (US)** | ) | |
| **LLC, d/b/a BMG CHRYSALIS US,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tollie Carter has sued Maria A. Pallante in her capacity as the Register of Copyrights,[1] as well as ARC/Conrad Music, LLC ("ARC"), Fuji Music Group, Inc. ("Fuji"), and BMG Rights Management (US) LLC ("BMG"). He challenges certain actions of the Register of Copyrights, which are not at issue for purposes of the present motion, and charges that ARC, Fuji, and BMG (hereafter "the Publisher Defendants") infringed his copyrights in certain songs by selling unauthorized licenses to third parties, who in turn publicly performed the songs. The Publisher Defendants have moved to dismiss Carter's claims against them

---

[1] The Register of Copyrights has answered Carter's First Amended Complaint and indicated that Karyn T. Claggett is the Acting Register of Copyrights. Answer at 1 n.1, ECF No. 38. At its request, the Court hereby substitutes Karyn T. Claggett as a defendant in place of Maria Pallante. Fed. R. Civ. P. 25(d). Additionally, while the Register of Copyrights is listed as a defendant in the caption of Carter's complaint, the office itself is not listed as a party, and the Court has modified the caption accordingly.

under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). For the reasons that follow, the motion [43] is granted in part and denied in part.

## Background

Plaintiff Tollie Carter's father, Calvin Carter, and his uncle, James Bracken, were songwriters. Verified 1st Am. Compl. ¶¶ 16, 21–22, ECF No. 34. They wrote and published a number of songs in the 1950s, 1960s, and 1970s. *Id.* Calvin Carter's works included the song, "Goodnight Sweetheart Goodnight," "a big hit during the mid-1950's and decades thereafter." *Id.* ¶ 19.

Calvin Carter and James Bracken are now deceased. *Id.* ¶ 17, 23. Plaintiff Tollie Carter (hereafter "Carter") is the sole heir to each of their estates, including rights in many of their copyrighted works. *Id.* ¶¶ 19, 23. Prior to their deaths, each assigned rights in many of their songs to ARC. *Id.* ¶¶ 16, 64. Carter, however, has regained rights to many of these songs. First, in the late 1980s and early 1990s, Carter utilized a procedure under the version of the Copyright Act then in effect to exercise "renewal rights" in certain songs, thereby reacquiring them from ARC. *See id.* ¶¶ 81–83, 89–91. Then, in 2012, Carter required the rights to still more songs by utilizing a procedure under the current version of the Copyright Act to terminate ARC's rights in them. *See id.* ¶¶ 55–63. These terminations had an effective date of December 31, 2014. *Id.* ¶ 65.[2]

---

[2]    No more need be said about these procedures for purposes of the present motion. The Publisher Defendants do not dispute that Carter is the rightful owner of the songs at issue.

Despite his regaining rights to the songs, Carter claims that ARC, along with the other Publisher Defendants (ARC is owned by Fuji and administered by BMG, *id.* ¶¶ 3, 64), have infringed his copyrights in the songs and taken other unlawful actions in relation to his songs. Specifically, Carter alleges that the Publisher Defendants, "without [Carter's] authorization or consent, represented to numerous third parties it could license—and did license to those third parties—the performance rights and other rights to [Carter's songs]." *Id.* ¶ 69; *accord id.* ¶¶ 75, 78, 86, 94. These third parties in turn publicly performed and otherwise exercised Carter's exclusive rights in the songs, and the Publisher Defendants thereby financially benefited from their conduct by collecting royalties. *Id.* ¶¶ 70–71, 76, 79–80, 87–88, 95–96. Carter maintains that the Publisher Defendants have failed to pay royalties owed to him. *Id.* ¶¶ 98–99.

In his Verified First Amended Complaint, Carter includes the following counts: Count II, "Federal Copyright Infringement"; Count III, "Contributory Copyright Infringement"; Count IV, "Vicarious Copyright Infringement"; Count V, "Falsification of Copyright Management Information"; Count VI, "Unjust Enrichment"; Count VII, "Deceptive Trade Practices"; and Count VIII, "Tortious Interference with Prospective Business Interests."

## Analysis

The Publisher Defendants have moved to dismiss Carter's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1),

for want of personal jurisdiction under Rule 12(b)(2), and for failure to state a claim under Rule 12(b)(6).  The Court will address each of these in turn.

## I.     Subject Matter Jurisdiction: Rule 12(b)(1)

First, with respect to subject matter jurisdiction, Carter's claims arise in large part under federal copyright law, and therefore invoke the Court's federal question jurisdiction under 28 U.S.C. § 1331.  Carter's state law claims, in turn, arise from the same case or controversy, and the Court may therefore exercise supplemental jurisdiction over them under 28 U.S.C. § 1367.  The Publisher Defendants do not dispute these elemental principles, but instead argue that because Carter's copyright infringement allegations fail to state a claim, the Court lacks subject matter jurisdiction over Carter's claims.  Def.'s Mot. Dismiss 3–5, ECF No. 43.  This argument, however, conflates the bases of Rule 12(b)(1) and 12(b)(6) motions.  *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").  While there is an exception to this rule where a federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous," *id.* at 682–83, that exception does not apply here (nor do the Publisher Defendants argue that it should).  In any case, as we will see, Carter's copyright allegations do not fail to state a claim.  The Publisher Defendants' motion under Rule 12(b)(1) is therefore denied.

## II.     Personal Jurisdiction: Rule 12(b)(2)

Similarly, with respect to personal jurisdiction, the Publisher Defendants contend that Carter's personal jurisdiction allegations are inadequate.  Specifically, they assert that "[t]he Amended Complaint contains no specific factual allegations that Publisher Defendants purposely directed activities towards or had anything more than incidental contact with Illinois."  Mot. Dismiss at 7.  Carter's principal basis for alleging personal jurisdiction is as follows:

> This Court has specific personal jurisdiction over [the Publisher Defendants] because they have engaged in conduct, giving rise to the claims herein, that satisfies the Illinois long-arm statute . . . including the commission of tortious acts within Illinois and the commission of tortious acts outside Illinois knowing and intending that such act[s] would interfere with Illinois interests and cause injury within Illinois. Based on information and belief, [the Publisher Defendants] have licensed for profit the copyrighted music at issue to Illinois-based and non-Illinois entities and individuals to the injury of Plaintiff, an Illinois resident.

Am Compl. ¶ 8.  Carter argues that this Court may exercise specific personal jurisdiction over the Publisher Defendants as to these actions.  *See* Pl.'s Resp. 7–9, ECF No. 49.

At the motion to dismiss stage, the plaintiff's burden to establish personal jurisdiction depends on whether material facts are in dispute, and, in turn, whether an evidentiary hearing has been held.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  Where no material facts are in dispute, the plaintiff need only make out a prima facie case of personal jurisdiction, which the district court can resolve on the basis of written submissions, drawing all inferences and resolving all conflicts in favor of the plaintiff.  *Id.* at 782–83.  Here,

5

personal jurisdiction is governed by the law of the forum state and the Fourteenth Amendment Due Process Clause, and because Illinois's long-arm statute permits the exercise of personal jurisdiction to the extent permitted by the federal Constitution, the state and federal law inquiries merge. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). "The key question is therefore whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

For the court to exercise specific personal jurisdiction over a defendant, the defendant must have "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state" such that the defendant could reasonably anticipate being haled into court there, and "the alleged injury [must] arise[] out of the defendant's forum-related activities." *Id.* at 702. "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Id.*

Here, Carter's suit is based on intentional actions that the Publisher Defendants allegedly took in Illinois—specifically, selling licenses to his copyrighted songs to Illinois-based entities—knowing and intending that the effect of such actions would be felt in Illinois. Am. Compl. ¶ 8. This is a sufficient basis on which to conclude at the present stage that the Publisher Defendants purposefully

6

directed the alleged conduct at Illinois and that Carter's suit arises directly from that conduct. *Tamburo*, 601 F.3d at 703, 708–09. In addition, exercising jurisdiction would not offend traditional notions of fair play and substantial justice, given that Carter resides here, and it would be unreasonable to expect him to file separate suits against the Publisher Defendants in their home jurisdictions (ARC and Fuji in California, BMG in Delaware or New York). Am. Compl. ¶¶ 3–4; *see Tamburo*, 601 F.3d at 709–10.

Moreover, while the Publisher Defendants deny that the licenses they sold violated the law, they have not denied that they sold licenses to Illinois-based entities. Carter has therefore satisfied his burden of establishing a *prima facie* case of personal jurisdiction. *Purdue Research*, 338 F.3d at 782–83 & nn.13–14. Nor is the Publisher Defendants' argument that Carter has failed to state a claim for copyright infringement, Defs.' Reply 5, ECF No. 50, sufficient to negate personal jurisdiction. Accordingly, the Publisher Defendants' motion to dismiss for want of personal jurisdiction is denied.

## I.    Failure to State a Claim: Rule 12(b)(6)

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under federal notice pleading standards, "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted);

*see also* Fed R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Additionally, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged in the complaint. *Id.* Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, the plausibility standard is not akin to a probability requirement but, rather, asks for more than a sheer possibility that a defendant acted unlawfully. *Id.*

## A. Copyright Claims

### 1. Copyright Infringement

The Publisher Defendants first move to dismiss Carter's allegations of copyright infringement, arguing that they fail to state a plausible claim. A claim of direct copyright infringement comprises two elements: (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The act of "copying," however, refers more broadly to infringing upon any one of a copyright owner's exclusive rights as listed in the Copyright Act: namely, reproduction, preparation of derivative works, distribution, public performance, public display,

and for sound recordings, public performance by digital audio transmission. 17 U.S.C. § 106; *see Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613, 617 (7th Cir. 2014).

Here, the core of Carter's theory of copyright infringement is straightforward: the Publisher Defendants sold licenses to Carter's copyrighted songs to third parties without Carter's authorization. Am. Compl. ¶¶ 69, 75, 78, 86, 94, 107–08. In other words, Carter claims that the Publisher Defendants violated his exclusive right to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3).[3]

The Publisher Defendants maintain that Carter's allegations of copyright infringement "are mere conclusions without any factual basis," because Carter does not state who the third parties are, which songs were licensed, or when the licenses were sold. Reply at 8. But Rule 8's pleading requirement does not require this level of specificity in relation to copyright claims. *Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 WL 2357621, at *4 (N.D. Ill. May 28, 2013) (citing *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993)) ("[C]laims for copyright infringement must satisfy the pleading requirements under Rule 8 and need not be pleaded with heightened specificity."); *see, e.g.*, *Fergon Architects LLC v. Oakley Home Builders, Inc.*, No. 13 C 6019, 2014 WL 340035, at *2 (N.D. Ill. Jan. 30, 2014) ("Although

---

[3] Looking past this core contention, the Publisher Defendants identify a number of additional allegations in Carter's amended complaint, arguing that these allegations do not constitute copyright infringement. Reply at 6–7. But the Court does not understand Carter's claim to be based on these allegations, which appear to be offered merely in support of his copyright infringement claim, or in support of his other claims.

[plaintiff] does not allege specific details as to each infringing act (such as where exactly [defendant] built the duplicate homes, or to whom exactly it sold the plans), that level of detail is not required to state a claim for copyright infringement."); *Golden v. Nadler Pritikin & Mirabelli*, No. 05 C 0283, 2010 WL 5373876, at *2 (N.D. Ill. Dec. 21, 2010) (holding that the plaintiff's allegation that a defendant "without consent or approval of the copyright holder[] made and used the works" satisfied Rule 8's pleading requirement).

Rather, the Publisher Defendants' arguments sound in Rule 9(b), which requires that fraud or mistake must be pleaded with particularity and satisfy the "who, what, when, where, and how" test. Fed. R. Civ. P. 9(b); *e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Rule 8, by contrast, requires that Carter state only a plausible claim for relief, and he has done so here. Carter has alleged that the Publisher Defendants possessed the copyrighted songs at issue and licensed them to third parties after he had reclaimed their rights.[4] He cannot be expected to know at this stage who the third parties were, when these sales occurred, or which of his songs were licensed. This information, if it exists, is exclusively within the Publisher Defendants' knowledge, and Carter can obtain it

---

[4] The parties dispute the significance of an exhibit Carter attached to his complaint that contains various royalty statements for some of the songs at issue corresponding to a period of time between 2015 and 2016. *See* Am. Compl., Ex. 27, ECF No. 34-27. Carter claims that these statements are near-proof of infringement, Resp. at 15–16, while the Publisher Defendants contend that they do nothing but demonstrate the lawfulness of their conduct, Reply at 8. At this stage, these royalty statements are significant merely insofar as they lend plausibility to Carter's allegations that the Publisher Defendants were licensing the copyrighted songs during the period in question. Whether issuing these licenses constituted infringement is a question for another day.

only through discovery. At this stage, Carter has stated all that Rule 8 requires. The Publisher Defendants' motion to dismiss his copyright infringement claim is therefore denied.

### 2. Contributory & Vicarious Copyright Infringement

Next, the Publisher Defendants move to dismiss Carter's allegations of contributory and vicarious copyright infringement on the basis that they also fail to state a claim. "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations omitted). Thus, there can be no contributory or vicarious infringement without proof of direct infringement by a third party. To make out his claims of contributory and vicarious infringement, Carter therefore asserts that the Publisher Defendants "materially induced and caused third parties to, among other things, publicly perform [Carter's songs] by virtue of a licensing agreement," Am. Compl. ¶ 113, and "exercised control over [these] third parties' conduct by means of a detailed and restrictive licensing agreement," *id.* ¶ 117.

The Publisher Defendants contend that these allegations are insufficient to state a claim because they amount to no more than "someone did something, sometime, with one or some of [Carter's] songs." Mot. Dismiss at 9. Again, however, the Publisher Defendants demand too high a pleading standard. *Blank Prods., Inc. v. Warner/Chappell Music, Inc.*, No. 11 CIV. 7927 KMW, 2013 WL

32806, at *4 (S.D.N.Y. Jan. 3, 2013) (holding that similar claims of contributory and vicarious infringement were "plausible even without specifically identifying *which* third parties have infringed or exactly which songs have been copied," and noting that the claimant "[would] identify specific end users through discovery"); *see Gordon v. Pearson Educ., Inc.*, 85 F. Supp. 3d 813, 821 (E.D. Pa. 2015) ("At this juncture, and without the benefit of discovery, Plaintiff is not required to identify every third party that has purportedly engaged in direct infringement to which Defendant contributed, particularly when much of that information is uniquely within Defendant's control."); *cf. Live Face on Web, LLC v. Kam Dev., L.L.C.*, No. 16 C 8604, 2016 WL 7374279, at *4 (N.D. Ill. Dec. 20, 2016) (permitting a vicarious infringement claim to proceed where the plaintiff identified the directly infringing party only as a "website viewer" or "average online visitor"). Here, Carter has stated a plausible claim that the Publisher Defendants wrongfully licensed the copyrighted songs to third parties, who publicly performed the songs at issue pursuant to the allegedly invalid licenses. This gives the Publisher Defendants adequate notice of his claim such that they can prepare a defense, and Carter, who cannot be expected to know the details of such licensing agreements at this stage, will need to substantiate his claims in discovery. The Publisher Defendants' motion to dismiss Carter's contributory and vicarious infringement claims is therefore denied.

12

### 3. Claims Premised on the Renewal Songs

As explained above, Carter's claims are based in part on the Publisher Defendants' purported infringement with respect to the songs over which Carter exercised renewal rights ("the Renewal Songs"). The Publisher Defendants seek to dismiss Carter's claims insofar as they relate to the Renewal Songs on the basis that they are barred by the Copyright Act's statute of limitations. Under the Copyright Act, "[n]o civil action shall be maintained . . . unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). For purposes of copyright infringement, each violation of a copyright owner's exclusive rights under § 106 is a distinct violation, at which time the statute of limitations begins to run respective to that violation. *Chi. Bldg. Design*, 770 F.3d at 614. Moreover, as with other statutes of limitations, the statute of limitations under the Copyright Act is an affirmative defense that a plaintiff need not plead around. *Id.* at 613. A motion to dismiss on the basis of the statute of limitations should be granted only if the complaint lays out everything necessary to determine that the claim is time-barred. *Id.* at 613–14.

Here, not only does Carter's complaint fail to establish that the statute of limitations has run in relation to his claims pertaining to the Renewal Songs, but he specifically alleges otherwise: namely, that the Publisher Defendants infringed on his copyrights in the songs up until October 18, 2016. Am. Compl. ¶¶ 85, 93. While the Publisher Defendants are correct to point out that the renewal dates for these songs were in the 1980s and 1990s, the dates of the alleged infringement, not

13

renewal, are the dates that govern for purposes of the statute of limitations. Accordingly, the Publisher Defendants' motion to dismiss Carter's infringement claims related to the Renewal Songs is denied.[5]

### 4.    Digital Millennium Copyright Act Claim

In addition to seeking to dismiss Carter's claims under the Copyright Act, the Publisher Defendants also contend that his claim under the Digital Millennium Copyright Act ("DMCA") should be dismissed.  The DMCA states, in pertinent part, that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . provide copyright management information that is false." 17 U.S.C. § 1202(a)(1).  "Copyright management information" is defined, in pertinent part, as "information conveyed in connection with copies or phonorecords of a work," including "[t]he name of, and other identifying information about, the copyright owner of the work."  *Id.* § 1202(c)(3).  Carter alleges that the Publisher Defendants, as part of unlawfully licensing his songs, "provided false copyright management information to third parties, including false information about the name of, and other identifying information about, the copyright owner of the work, as well as about terms and conditions for use of the work."  Am. Compl. ¶ 121.

The Publisher Defendants first argue that § 1202(a)(1) of the DMCA "was not intended to apply to circumstances that [do] not have any relation to the Internet,

---

[5]    Insofar as Carter seeks to proceed on the basis of infringing actions that took place more than three years prior to his commencing this action, such claims could be barred because there is no continuing violation doctrine under the Copyright Act.  *Chi. Bldg. Design*, 770 F.3d at 615.  As such, the Publisher Defendants may renew their statute of limitations defense at a more appropriate time, if they wish.

electronic commerce, automated copyright protections or management systems, public registers, or other technological measures or processes as contemplated in the DMCA as a whole." Mot. Dismiss at 12. But, as explained in the first case on which the Publisher Defendants rely,

> [t]here is nothing particularly difficult about the text of § 1202. . . . § 1202 simply establishes a cause of action for the removal of (among other things) the name of the author of a work when it has been "conveyed in connection with copies of" the work. The statute imposes no explicit requirement that such information be part of an "automated copyright protection or management system[.]" . . . In fact, it appears to be extremely broad, with no restrictions on the context in which such information must be used in order to qualify as [copyright management information]. If there is a difficulty here, it is a problem of policy, not of logic.

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 (3d Cir. 2011). Indeed, the plain text of the statute proscribes falsely identifying the copyright owner of a song in connection with licensing its rights. Contrary to the Publisher Defendants' argument, no connection to the Internet or electronic commerce is necessary. *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1101 (N.D. Ill. 2014) (rejecting a similar argument based on the plain language of the statute, as "most courts in recent years" have done).[6]

The Publisher Defendants further argue that Carter's DMCA claim is insufficiently pleaded, and that Carter does not allege that false copyright information was conveyed "with copies of the work." Reply at 11. Both arguments

---

[6] The Court is therefore not persuaded by decisions cited by the Publisher Defendants that reached a contrary decision relying on the legislative history and broader purposes of the DMCA, rather than the plain language of § 1202. *IQ Grp., Ltd. v. Wiesner Pub., LLC*, 409 F. Supp. 2d 587, 591–98 (D.N.J. 2006); *accord Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1194–1203 (C.D. Cal. 2007).

miss the mark. First, as with Carter's other copyright claims, his DMCA claim states a plausible claim for relief. He need not plead particularized facts as to how, when, and to whom the Publisher Defendants communicated false information in connection with their purported licensing agreements, nor could Carter be expected to at this stage, as any such information is exclusively within the Publisher Defendants' knowledge. In any event, Carter unmistakably alleges that false copyright information was conveyed with copies of the work by way of the licensing agreements he claims the Publisher Defendants entered into with third parties.

For these reasons, the Publisher Defendants' motion to dismiss Carter's DMCA claim is denied.

### B.    State Law Claims

In addition to his federal claims, Carter's complaint also posits state law claims of unjust enrichment, deceptive trade practices, and tortious interference with prospective business interests. The Publisher Defendants move to dismiss these claims on the basis that they are preempted under the Copyright Act's preemption provision, 17 U.S.C. § 301.

The Seventh Circuit has stated that preemption is an affirmative defense that a plaintiff generally need not anticipate in its pleadings, and that the proper mechanism for moving to dismiss on the basis of preemption is Rule 12(c). *Bausch v. Stryker Corp.*, 630 F.3d 546, 561–62 (7th Cir. 2010); *see also S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 547 (7th Cir. 2012). Nevertheless, the Seventh Circuit has affirmed dismissals under Rule 12(b)(6) on the basis of

preemption. *E.g.*, *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 838, 840–41 (7th Cir. 2015). Here, Carter has not objected to the Publisher Defendants' request to dismiss his state law claims under Rule 12(b)(6) on preemption grounds. And, in any event, a Rule 12(b)(6) dismissal on the basis of an affirmative defense is proper when a complaint sets out everything necessary to establish the defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Accordingly, insofar as Carter's complaint sets out everything necessary to determine a claim is preempted, the Court will consider the Publisher Defendants' motion on that basis. Given the present posture of this case, however, the Court will follow the Seventh Circuit's instructions and give Plaintiff leave to amend its preempted state law claims. *See Bausch*, 630 F.3d at 561–62.

> Section § 301(a) of the Copyright Act states:
>
> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Thus, for the Copyright Act to preempt a state law right, two conditions must be met: (1) the right must concern a work of authorship fixed in a tangible medium of expression that comes within the subject matter of copyright specified in § 102 and § 103, and (2) the right must be equivalent to any of the exclusive rights attaining to a copyright as listed in § 106. *Id.*; *Toney v. L'Oreal*

*USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005).[7]   A state law right is considered "equivalent" under the second prong if it is "infringed by the mere act of reproduction, performance, distribution or display." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 677 (7th Cir. 1986) (internal quotation marks and citation omitted); *see also Toney*, 406 F.3d at 910 ("[T]o avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law—i.e., conduct other than reproduction, adaptation, publication, performance, and display.").   Even if a state law cause of action entails elements that are additional to those necessary to prove copyright infringement, the state law cause of action is nevertheless preempted if "the additional elements do not differ in kind from those necessary for copyright infringement." *Baltimore Orioles*, 805 F.2d at 677 n.26.

### 1.   Unjust Enrichment

In Count VI of his complaint, Carter pleads unjust enrichment "in the alternative."   He alleges that the Publisher Defendants "without [Carter's] authorization licensed to numerous third parties the performance rights and other rights to [Carter's songs]," Am. Compl. ¶ 125; "unlawfully received and continue[] to unlawfully receive royalties and other monetary benefits from such unauthorized licenses," *id.* ¶ 126; "unlawfully retain[] foreign and domestic royalties for numerous Bracken-authored or co-authored songs", *id.* ¶ 127; and "have impoverished and

---

[7]   Here, Carter does not dispute that the first requirement for preemption is satisfied, because the state law rights he asserts pertain to the songs at issue, which are fixed in a tangible medium of expression and come within the Copyright Act's subject matter.

continue to impoverish [Carter], including by [Carter's] loss of licensing revenue and a dilution and diminution in the value of [Carter's] licenses, *id.* ¶ 128. The Publisher Defendants argue that this claim, as pleaded, is preempted.

Unjust enrichment occurs under Illinois law where "'the defendant has unjustly retained a benefit to the plaintiff's detriment, and th[e] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, N.E.2d 672, 679 (Ill. 1989)). Carter's claim, in essence, asserts that the Publisher Defendants have wrongfully licensed songs that he owns and unjustly retained royalties and monetary benefits therefrom. It is readily apparent that such conduct is not qualitatively different from that proscribed by the Copyright Act. Carter's complaint therefore states all that is needed to conclude that his unjust enrichment claim is preempted. *CustomGuide v. CareerBuilder*, LLC, 813 F. Supp. 2d 990, 1003–04 (N.D. Ill. 2011) (holding that a claim that a defendant was unjustly enriched by selling the plaintiff's products and services was preempted); *see generally* 1 Nimmer on Copyright § 1.01[B][1][g] (2017) (observing that similar claims of unjust enrichment are preempted).

Carter concedes that this claim "would be preempted by the Copyright Act *if* [his] unjust enrichment claim were not pled in the alternative." Resp. at 21. But pleading in the alternative does not save a preempted claim from preemption. *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 489 F. Supp. 2d 865, 869 (N.D. Ind.

2007) ("[R]egardless of the *merits* of any of the common law claims brought by [plaintiff], if any common law claim is preempted by . . . the Copyright Act then it cannot go forward, ever—it is not a matter of pleading in the alternative."); *see Edgenet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997, 1031–33 (E.D. Wis. 2010) (dismissing an unjust enrichment claim as preempted by the Copyright Act, notwithstanding that the claim was pleaded in the alternative); *cf. Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989) (holding, in a different context, that "the availability of a federal remedy is not a prerequisite for federal preemption").[8]

In addition, Carter argues that certain allegations under his unjust enrichment count remove the claim from the scope of preemption. First, he points to his allegation that the Publisher Defendants have failed to pay him royalties and licensing revenues, contending that this conduct is qualitatively different from that proscribed by the Copyright Act. He relies on *AVKO Educational Research Foundation Inc. v. Wave 3 Learning Inc.*, No. 15-CV-3393, 2015 WL 6123547 (N.D. Ill. Oct. 15, 2015), in which the court permitted an unjust enrichment claim to proceed insofar as it "reli[ed] on the [defendants'] failure to pay royalties and licensing revenues *from an agreement*," *id.* at *5 (emphasis added). But here, there is no such agreement alleged between Carter and the Publisher Defendants; rather,

---

[8]     In support of his attempt to plead unjust enrichment in the alternative, Carter cites *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409 (S.D.N.Y. 2004). In *Ulloa*, a court permitted an unjust enrichment claim to proceed in the face of a preemption challenge because there were "factual disputes regarding the validity of Plaintiff's copyright" and there was a possibility a jury might conclude that the plaintiff had licensed her copyright to the defendants. *Id.* at 419. Neither circumstance is present in this case.

the royalties and licensing revenues are payments Carter alleges the Publisher Defendants have wrongfully obtained by licensing songs to which he owns the copyrights without permission to do so.  This conduct is precisely what is proscribed by the Copyright Act.

Carter further asserts in his response that his unjust enrichment claim targets "Defendants' unjust[] [retention of] benefits related to the commercial value and goodwill of the song stemming from exercising strategic decisions over what kind of products and services for which it should or should not be licensed."  Resp. at 21–22.  He seems to assert that these benefits stem from rights qualitatively different from those protected under the Copyright Act, but if this is so, the Court is at a loss to understand how.  In support of this assertion, Carter cites to a provision of his complaint in which he states that he has suffered "loss of licensing revenue and a dilution and diminution in the value of [Carter's] licenses."  Resp. at 22 (citing Am. Compl. ¶ 128).  But this loss was occasioned by the Publisher Defendants allegedly selling unauthorized licenses to the songs at issue.  This too is proscribed by the Act.

For these reasons, Carter's unjust enrichment claim is dismissed without prejudice.  If Carter can state an unjust enrichment claim that is qualitatively different from his claims under the Copyright Act, he is given leave to amend his complaint accordingly.

### 2.    Deceptive Trade Practices

In Count VII, Carter alleges that the Publisher Defendants have engaged in deceptive trade practices. Specifically, he states that the Publisher Defendants

> in and through various licenses and license negotiations and advertising material[] employed deception and misrepresentations of material facts—namely, falsely representing that [they] had the rights to license [Carter's] [s]ongs when [they] did not have such rights—with the intent that third parties (Illinois and non-Illinois consumers and businesses) would rely on this deception and concealment of material facts in purchasing licenses to [Carter's] songs.

Am. Compl. ¶ 132. Carter does not indicate the legal basis for this claim, but because he references the "UDTPA" and "injuries to Illinois residents" in his response, Resp. at 22, the Court will presume that he endeavors to state a claim under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 ("the IUDTPA"). The IUDTPA lists "pass[ing] off goods or services as those of another" and "caus[ing] likelihood of confusion or of misunderstanding as to the source . . . of goods" as deceptive trade practices. 815 Ill. Comp. Stat. 510/2(a)(1)–(2).

Courts in this circuit have generally held that a deceptive trade practices claim where a plaintiff alleges that the defendant passed off the plaintiff's copyrighted works as the defendant's (*i.e.*, "reverse passing off") involves conduct that is not qualitatively different from that proscribed under the Copyright Act and is therefore preempted. *E.g.*, *Fergon Architects*, 2014 WL 340035, at *4 (holding that a deceptive trade practice claim alleging that the defendant failed to disclose that the plaintiff was the actual designer of copyrighted material was preempted);

22

*CustomGuide*, 813 F. Supp. 2d at 999 (dismissing an IUDTPA claim alleging that the defendant "actively promoted and misrepresented [plaintiff's] products" as its own on the basis of preemption). Here, Carter's IUDTPA claim appears to stem at least in part from the Publisher Defendants passing off the copyrighted songs as their own, so that consumers would license them. This conduct falls squarely within the Copyright Act and is therefore preempted.

In his response, Carter attempts to differentiate the nature of his IUDTPA claim. First, he states that the focus of the claim is that "third-party consumers who seek to license the songs are unquestionably misled by the [Publisher] Defendants' false representations that they own rights to the music" and therefore "go to [the Publisher] Defendants for the songs rather than to [Carter]." Resp. at 23. But, as explained above, the Copyright Act provides the exclusive cause of action for challenging this conduct.

Second, Carter states that the Publisher Defendants' false representations may lead consumers to believe that the Publisher Defendants "were abiding by the quality control standards set by [Carter] when in fact they were following their own quality control standards via licensing restrictions." *Id.* But this concern (which does not appear in Carter's amended complaint) directly contradicts Carter's stated theory that consumers were under the belief that the Publisher Defendants owned the copyrighted songs.

Finally, Carter observes that the Publisher Defendants "could have" misrepresented that they owned the copyrighted songs in advertising material

without infringing copyrights to the songs. *Id.* Indeed, Carter's complaint is replete with allegations that the Publisher Defendants misrepresented that they owned the songs at issue, separate and apart from then licensing rights to the songs. *E.g.*, *id.* ¶ 68. Making misrepresentations about a copyrighted work in advertising material—short of licensing the copyrighted works at issue or taking any other action in connection with a copyright owners exclusive rights—is not among the exclusive rights enumerated in § 106 of the Copyright Act. Thus, insofar as Carter's deceptive trade practices claim is premised on false advertising, the Court cannot conclude at this stage that it is preempted by the Copyright Act. *See Stephen & Hayes Constr., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1199 (N.D. Ill. 1998) (finding that an IUDTPA claim based on a false assertion of a product's affiliation that resulted in consumer confusion "[did] not focus on the unauthorized reproduction, distribution, performance, or display of the copyrighted material," and therefore was not preempted (footnotes omitted)); *see generally* 1 Nimmer on Copyright § 1.01[B][1][e] (distinguishing between the preemption of IUDTPA claims based on reverse passing off and those based on fraud and creating consumer confusion).

For these reasons, Carter's deceptive trade practices claim is dismissed insofar as it seeks to proceed on a theory of reverse passing off, but may proceed insofar as it is based solely on the Publisher Defendants' advertising materials. If Carter wishes to amend his complaint accordingly, he may do so.

### 3.    Tortious Interference

Finally, in Count VIII, Carter claims that the Publisher Defendants tortiously interfered with his prospective business interests.  He asserts that he "had a reasonable expectation of entering into valid business relationships with numerous music licensees," and the Publisher Defendants "knew of this reasonable expectancy," but "nonetheless represented to third parties that they had rights to license [Carter's] songs" and "convinc[ed] licensees to purchase licenses" from the Publisher Defendants, instead of from Carter.  Am. Compl. ¶¶ 135–38.  Under Illinois law, tortious interference with prospective business interests requires the plaintiff to prove: "(1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (citing *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991)).

Here, the basis for Carter's tortious interference claim is that the Publisher Defendants stated that they owned the rights to the songs at issue and sold them to licensees, thereby knowingly preventing Carter from doing so.  This conduct is not qualitatively different from the Publisher Defendants' alleged infringement of Carter's copyrights in the songs.  *Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 950 F. Supp. 896, 899 (C.D. Ill. 1997) (concluding that plaintiffs' claim that the defendants used their copyrighted architectural plans to deprive them of anticipated business was equivalent to complaining that the defendants distributed

and published the copyrighted work at issue); *see Act II Jewelry, LLC v. Wooten*, No. 15 C 6950, 2016 WL 3671451, at *9 (N.D. Ill. July 11, 2016) (holding that a claim that the defendant tortiously interfered with existing contracts by "marketing and selling jewelry using [the plaintiff's] alleged designs and intellectual property" was preempted under the Copyright Act); *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1363 (N.D. Ill. 1994) (surveying cases in which "defendants were selling the allegedly infringing works under their own names" and concluding that such claims, when styled as tortious interference, were preempted).

Carter argues that his tortious interference claim is not preempted because it requires an element additional to copyright infringement: false statements and representations made to convince purchasers to buy licenses. Resp. at 25. This argument fails for two reasons. First, a false statement or representation is not an element of a tortious interference claim. Second, such an additional element would not make Carter's claim differ in kind from copyright infringement, because the false statements of ownership at issue were part and parcel of selling an unauthorized license in order to deprive Carter of a business opportunity. *See Act II Jewelry*, 2016 WL 3671451, at *9 (holding that the additional elements of "awareness and intentional interference" in a tortious interference claim did not implicate conduct that qualitatively differs from a copyright violation).[9]

---

[9] Carter again relies on *AVKO*, 2015 WL 6123547, in which the court held that a tortious interference with prospective business relationships claim was not preempted by the Copyright Act. *Id.* at *6. The conduct at issue in *AVKO*, however, was the defendants' use of ongoing and threatened litigation to influence individuals not to buy the plaintiff's products. *Id.* Such conduct is not only qualitatively different from that proscribed by the

For these reasons, Carter's tortious interference claim is preempted and therefore dismissed without prejudice. Carter is granted leave to amend if he believes he can state a claim that involves conduct qualitatively different from that proscribed by the Copyright Act.

## Conclusion

For the foregoing reasons, the Publisher Defendants' motion to dismiss [43] is granted in part and denied in part. Counts VI (Unjust Enrichment) and VIII (Tortious Interference with Prospective Business Interests) are dismissed in full and Count VII (Deceptive Trade Practices) is dismissed in part as stated above. If Carter wishes to amend these counts, he must do so by June 30, 2017. The motion is denied in all other respects. The clerk is instructed to substitute Karyn T. Claggett as defendant in place of Maria A. Pallante and strike Register of Copyrights as a separate defendant. A status hearing is set for August 2, 2017.

**IT IS SO ORDERED.**                    ENTERED  6/9/17

_____
**John Z. Lee**
**United States District Judge**

---

Copyright Act, but wholly different from that alleged in this case. Carter's reliance on *AVKO* is misplaced.